No. 2025-1787

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

STA GROUP LLC,

*Appellant*,

v.

MOTOROLA SOLUTIONS, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2023-01295

**APPELLEE MOTOROLA SOLUTIONS, INC.'S RESPONSE BRIEF**

March 2, 2026

Lauren J. Dreyer
Eliot D. Williams
Katharine M. Burke
Baker Botts L.L.P.
700 K Street, NW
Washington, DC 20001

Robert L. Maier
Baker Botts L.L.P.
30 Rockefeller Plaza
New York, NY 10112

Clarke Stavinoha
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201

Lori Ding
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002

*Attorneys for Appellee*
*Motorola Solutions, Inc*

## **<u>REPRESENTATIVE PATENT CLAIM</u>**

1.    A method comprising:

monitoring a selection of a communication channel by a user of a mobile communication device;

providing a plurality of radio frequencies on a display of the mobile communication device, each radio frequency being associated with a geographical zone from which a plurality of video feeds associated with the geographic zone are sourced;

monitoring a selection of a radio frequency of the plurality of radio frequencies by the user[;]

identifying at least one video feed by selecting the at least one video feed from the plurality of video feeds associated with the geographic zone, wherein the at least one video feed is associated with the selected communication channel based on a user policy that identifies one or more video feeds that are relevant to the user when the user accesses the selected communication channel, the one or more video feeds being independent of the selected communication channel; and

providing access to the identified at least one video feed to the mobile communication device based on the user policy.

FORM 9. Certificate of Interest

Form 9 (p. 1)<br>March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**   25-1787

**Short Case Caption**   STA Group LLC v. Motorola Solutions, Inc.

**Filing Party/Entity**   Motorola Solutions, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/27/2025

Signature: /s/ Lauren J. Dreyer

Name: Lauren J. Dreyer

**FORM 9. Certificate of Interest** <span style="float:right">**Form 9 (p. 2)**<br>**March 2023**</span>

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Motorola Solutions, Inc. | | Vanguard Group |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| Michael E. Knierim<br>Baker Botts L.L.P. | Joseph Cahill<br>Baker Botts L.L.P. | Stephen O'Donohue<br>Baker Botts L.L.P. |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)   ☐  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

JURISDICTIONAL STATEMENT .....................................................................2

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE...............................................................................2

    I.     The '830 Patent .........................................................................2

    II.    The IPR Proceeding...................................................................6

        A.     Shaffer.............................................................................6

        B.     Saylor .............................................................................9

        C.     The Board's Final Written Decision ..........................12

SUMMARY OF ARGUMENT ...........................................................................18

STANDARD OF REVIEW .................................................................................19

ARGUMENT .......................................................................................................20

    I.     The Board Already Considered and Rejected STA's Only Appeal Argument: That Saylor and Shaffer Provide "Redundant Disclosures"...............................................................................20

    II.    STA Fails to Show Prejudicial Error Because Other Substantial Evidence Supports the Board's Findings on Motivation to Combine ....................................................................................30

CONCLUSION ...................................................................................................34

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Almirall, LLC v. Amneal Pharms. LLC,*
    28 F.4th 265 (Fed. Cir. 2022) ...................................................................19

*Apple Inc. v. Gesture Tech. Partners, LLC,*
    127 F.4th 364 (Fed. Cir. 2025) .................................................................25

*Apple Inc. v. Gesture Tech. Partners, LLC,*
    129 F.4th 1367 (Fed. Cir. 2025) ...............................................................27

*Applications in Internet Time, LLC v. RPX Corp.,*
    897 F.3d 1336 (Fed. Cir. 2018) .................................................................29

*Barrette Outdoor Living, Inc. v. Fortress Iron, LP,*
    156 F.4th 1353 (Fed. Cir. 2025) ...............................................................29

*Becton Dickinson & Co v. C.R. Bard, Inc.,*
    922 F.2d 792 (Fed. Cir. 1990) ...................................................................30

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ...................................................................................19

*Ericsson Inc. v. Intell. Ventures I LLC,*
    890 F.3d 1336 (Fed. Cir. 2018) .................................................................28

*Graham v. John Deere Co.,*
    383 U.S. 1 (1966) .......................................................................................20

*In re Gartside,*
    203 F.3d 1305 (Fed. Cir. 2000) .................................................................19

*In re Google Tech. Holdings LLC,*
    980 F.3d 858 (Fed. Cir. 2020) ...................................................................30

*In re Watts,*
    354 F.3d 1362 (Fed. Cir. 2004) .................................................................30

*Intel Corp. v. PACT XPP Schweiz AG,*
    61 F.4th 1373 (Fed. Cir. 2023) .................................................................25

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ................................................................................20

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
   882 F.3d 1056 (Fed. Cir. 2018) ..............................................................27

*Randall Mfg. v. Rea*,
   733 F.3d 1355 (Fed. Cir. 2013) ..............................................................20

*Roku, Inc. v. Universal Elecs., Inc.*,
   63 F.4th 1319 (Fed. Cir. 2023) ..........................................................27, 33

*Schwendimann v. Neenah, Inc.*,
   82 F.4th 1371 (Fed. Cir. 2023) ...............................................................24

*Sierra Wireless, ULC v. Sisvel S.p.A.*,
   130 F.4th 1019 (Fed. Cir. 2025) ..............................................................28

*Walker v. Health Int'l Corp.*,
   845 F.3d 1148 (Fed. Cir. 2017) ...............................................................30

*WhatsApp, Inc. v. TriPlay, Inc.*,
   752 F. App'x 1011 (Fed. Cir. 2018) .........................................................29

## STATEMENT OF RELATED CASES

No appeal in or from the same action was previously before this or any other appellate court. Below are cases known to counsel to be pending in any tribunal that will directly affect or be affected by this Court's decision in the pending appeal:

- *STA Group LLC v. Motorola Solutions, Inc.*, No. 2:22-cv-00381-JRG (E.D. Tex.)

- *STA Group LLC v. Motorola Solutions, Inc.*, No. 2:24-cv-00234-JRG (E.D. Tex.)

## **INTRODUCTION**

The Board correctly invalidated all challenged claims (claims 1-5, 7-19, and 21-24) of U.S. Patent No. 8,994,830 (the '830 Patent) because the prior art combination rendered obvious the modest alleged contribution of the '830 Patent to the crowded field of mobile communication: providing access to video feeds associated with communication channels for mobile devices based on user policies.

STA's only challenge on appeal is to attack the Board's well-supported factual findings on motivation to combine. The Board's decision, however, rests on a robust evidentiary record that STA largely ignores. This Court reviews the Board's factual findings—including motivation to combine—for substantial evidence, which STA fails to establish was lacking. Instead, STA asks this Court to revisit the Board's findings anew, even though the Board already expressly considered and rejected STA's arguments. The Board found—based on substantial evidence, including expert testimony and the disclosures in the prior art references themselves—that a person of ordinary skill would have been motivated to combine the Shaffer and Saylor references to achieve direct and seamless cross-network communications and that the references are complementary, not redundant—the same argument that STA rehashes on appeal.

Even if STA could identify error in the Board's analysis of STA's redundancy argument, STA has not shown—and cannot show—that any such error was

1

prejudicial. Unchallenged evidence supports the Board's finding that a skilled artisan would have been motivated to combine Shaffer and Saylor—the Board found that the references are well-suited for combination and, when combined, create a more efficient system.

Because the Board had substantial evidence to find a motivation to combine the prior art, the Board's well-reasoned decision should be affirmed.

## JURISDICTIONAL STATEMENT

The Patent Trial and Appeal Board had jurisdiction over the *inter partes* review proceeding under 35 U.S.C. §§ 6(b)(4), 311. The Board entered a Final Written Decision on March 17, 2025. Appx1. This Court has jurisdiction to hear the appeal under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141(c), 319.

## STATEMENT OF THE ISSUES

1.      Whether the Board had substantial evidence to find that a person of ordinary skill in the art would have been motivated to combine the prior art references based on the references' complementary disclosures and expert testimony credited by the Board.

## STATEMENT OF THE CASE

**I.      The '830 Patent**

The '830 Patent aims to provide users of mobile-communication devices, such as first responders and emergency personnel, access to "video streams associated

2

with particular communication channels in a communication network." Appx102-105, 2:11-13, 2:31-44, 3:37-44, 5:38-6:21, 7:39-42. This allows those personnel, who may be communicating on channels in one network, to access relevant video feeds in another network. *See* Appx104, 5:60-6:17.

Figure 1B of the '830 Patent below illustrates an exemplary communication system 150 that associates video feeds (e.g., media streams from cameras 122 (green)) with various communication channels, such as audio or voice channels. Appx103, 3:30-44.



*FIG. 1B*

Appx91, Fig. 1B (annotated). Communication system 150 connects a variety of well-known networks (yellow), like a public switched telephone network (PSTN) 102, cellular network 104, or radio network 152. Appx102, 2:31-36. The system establishes communication channels providing "Virtual Talk Groups" to facilitate communications between the various well-known communication devices (blue) in the networks (e.g., telephones 106, mobile phones 108, Voice over Internet Protocol phones 110, push-to-talk radios 154, and computers 112). Appx102-103, 2:36-43, 3:30-4:9. The system also associates video feeds from cameras 122 with the communication channels to "facilitate access to the video feed by a user of a mobile device having video capabilities." *Id.*, 2:40-43, 3:3-10, 4:29-39.

By 2008, the priority date for the alleged invention, communication systems that established communication channels for allowing different networks to interoperate, and for allowing users in different networks to communicate, were already well-known. *See* Appx932 ¶ 53. Similarly, the prior art taught interoperable communication systems between communication networks. Appx932-933 ¶ 54. These known interoperability systems also allowed devices with video feeds in one network to communicate with devices in another network, Appx933-934 ¶¶ 55-56, which could significantly increase the volume of communications received by a user, Appx934-935 ¶¶ 57-58.

The '830 Patent purports to improve on the prior art by providing a user with access to video feeds based on a "user policy" that filters the video feeds to "only those feeds that are of particular interest to a user." *See* Appx102-105, 2:11-13, 3:3-15, 5:60-6:17, 7:47-59, 12:28-36. The '830 Patent teaches that when a user sets their communication device to a particular channel, the video feed associated with that channel may become accessible to that user. Appx103, 3:10-17. In an exemplary embodiment, the system shows a user only those video feeds of particular interest to that user, thus preventing the user from becoming "bombarded with a host of video feeds that are not relevant in a specific circumstance." *Id.* By "reducing the information overload to the end user," the '830 Patent purports to improve emergency dispatch systems, enabling public safety personnel and emergency response teams to isolate video feeds to the circumstances that call for their response. *See* Appx104-105, 6:3-17, 7:47-59.

Claim 1 of the '830 Patent generally recites the steps for monitoring the communications and providing access to a video feed based on a user policy:

1.     A method comprising:

[a] monitoring a selection of a communication channel by a user of a mobile communication device;

[b] providing a plurality of radio frequencies on a display of the mobile communication device, each radio frequency being associated with a geographical zone [c] from which a plurality of video feeds associated with the geographic zone are sourced;

[d] monitoring a selection of a radio frequency of the plurality of radio frequencies by the user[;]

[e] identifying at least one video feed by selecting the at least one video feed from the plurality of video feeds associated with the geographic zone, wherein the at least one video feed is associated with the selected communication channel based on a user policy that identifies one or more video feeds that are relevant to the user when the user accesses the selected communication channel, [f] the one or more video feeds being independent of the selected communication channel; and

[g] providing access to the identified at least one video feed to the mobile communication device based on the user policy.

Appx107, 12:18-39; *see also* Appx7. None of this claim language, however, is pertinent to the issue STA raises on appeal. Indeed, STA essentially concedes that the prior art fully disclosed each limitation of claim 1. Rather, STA's arguments on motivation to combine focus narrowly on unclaimed features and goals described generally in the '830 Patent.

## II.    The IPR Proceeding

Motorola filed an IPR petition challenging claims 1-5, 7-19, and 21-24 of the '830 Patent. Appx8. Ground 1 challenged these claims as obvious over Shaffer (U.S. Patent Publication No. 2006/0281471) and Saylor (U.S. Patent No. 7,113,090). *Id.* Motorola also included a second ground involving additional prior art references that the Board did not reach. Appx8; Appx85-86.

### A.    Shaffer

Just like the '830 Patent, Shaffer describes a communication system connecting various devices—such as computers, phones, radios, and cameras—used

by first responders, like police and fire departments. Appx1412-1413 ¶¶ 15, 25, 28.

Also like the '830 Patent, and as depicted in Shaffer's Figure 3 below, Shaffer

describes an interoperability system (IS) 120 (red) that connects users in different

networks by establishing cross-network communication channels, for example, by

putting endpoints into "a virtual talk group for communication using a particular IP

address." Appx1415 ¶ 39.



*FIG. 3*

Appx1409, Fig. 3 (annotated); Appx240-241 (annotated in Petition). The

interoperability system 120 uses "multicast IP [internet protocol] addresses"—i.e.,

communication    channels—to    permit    the    various    devices    on    different

communication networks to communicate with each other, thereby providing "network interoperability." *Id.*; *see also* Appx1412-1415 ¶¶ 16-20, 37-38 ("[Interoperability system] facilitates interoperability between endpoints and devices of various communication networks.").

Shaffer's Figure 3 illustrates a similar variety of networks as the '830 Patent, including radio networks 110 and 113, a LAN communication network 111, a Public Switched Telephone Network (PSTN) 112, and an IP network 114. Appx1414-1415 ¶ 37; *see also id.* ("[C]ommunication system 100 may comprise any number of IP or non-IP communication networks of any wireless or wireline form capable of communicating audio and/or video telecommunication signals, data, and/or messages, including signals, data or messages."). Like the '830 Patent, Shaffer also explains that the communication networks may include networks from first responders and emergency personnel using mobile devices, such as computers, personal digital assistants, and phones. *Id.*

As Motorola's Petition explained, and the Board found, Shaffer discloses several limitations of claim 1, other than those related to associating video feeds via a "user policy" (*see* portions of 1[c], 1[e]-[f]), which are disclosed by the combination with Saylor, as discussed below. *See* Appx33-64; Appx246-259. Shaffer specifically discloses mobile devices that allow security personnel to select a multicast IP address (i.e., communication channel) that is associated with security

8

forces in the area in which the security personnel are located, so the security personnel can monitor that communication channel (*see* element 1[a]). *See* Appx246-248. Shaffer also discloses that the security personnel use their mobile devices (which store a plurality of radio frequencies that are associated with a particular location (i.e., geographic zone)) to monitor a frequency associated with a nearby building (*see* element 1[b]). *See* Appx249-252. Shaffer also discloses that the mobile devices present radio frequencies to the user for their selection, which is monitored by the device's processor (*see* element 1[d]). *See* Appx253. And Shaffer discloses that notifications sent to a multicast address (communication channel) may be accessed by members with access to that address (*see* element 1[g]). *See* Appx259.

### B.    Saylor

Saylor describes a security "monitoring system" that provides "photos, pictures, [and] video" to an end user. Appx1517, 2:45-55. The security system sends a notification to a recipient, including emergency personnel, when it detects an "alarm situation." Appx1519, 5:37-42. For example, the notification can include "video clips" from video surveillance cameras. Appx1517, 2:45-55; Appx1522-1523, 11:67-12:6, 13:51-54. A central security network 100 (as depicted in Figure 1 below) may alert "identified entities via wireless and/or other devices, such as mobile devices." Appx1520, 7:40-42. When an alarm is detected—for example, by

control panels 120, 122, and 124 (green)—the central security network can send relevant information "via the Internet 150" or other methods to security or emergency contacts 162, 164 (blue). Appx1519-1522, 6:22-32, 7:40-48, 9:23-29, 11:46-55.



Appx1499, Fig. 1 (annotated).

Saylor describes receiving alarms using a packet-based networking protocol, like TCP/IP (Transmission Control Protocol/Internet Protocol). Appx1519, 7:16-23, 7:28-48; Appx1525, 17:10-41. The central security network processes the alarms and, according to rules and preferences set up by a user (i.e., "user policy"), transmits

notifications and information to relevant recipients in other networks, including security or emergency personnel in other types of networks with other communication protocols. *See* Appx1519-1521, 6:33-43, 8:18-33, 9:25-28. These notifications may include audio, video, or other data. *See* Appx1524, 16:41-51. Saylor also describes multiple "[m]ethods" by which the notifications may be sent, including "cell phone, regular phone, pager, PDA, email, instant messenger, or other form[s] of communication." Appx1522, 11:24-28.

As Motorola's Petition explained, and the Board found, the combination of Shaffer and Saylor discloses all limitations of claim 1, including the portions of elements 1[c] and 1[e]-[f] relating to the "user policy" and "identifying at least one video feed . . . associated with the selected communication channel based on a user policy." *See* Appx252-259. In the combination, Saylor's security system is one of the networks connected to Shaffer's communication system, with Saylor's video cameras installed in a geographic zone serviced by Shaffer's system (*see* element 1[c], 1[f]). *Id.* Saylor's security system stores user preferences identifying when to send videos to users, such as security personnel, based on events associated with the video feeds, like motion detected in a video (*see* element 1[e]). *See* Appx253-258. Saylor's address book associates a user with one of the communication channels (multicast IP addresses) established by Shaffer's interoperability system so that

11

Saylor may send video clips to users in another network, using the Shaffer system (*see* elements 1[e], 1[g]). *See* Appx255-259.

### C.    The Board's Final Written Decision

The Board invalidated all challenged claims of the '830 Patent as obvious over Shaffer and Saylor. Appx23-86. In support of its conclusion, the Board found that each limitation of the challenged claims is taught or suggested by Shaffer in view of Saylor (Appx32-85) and that a person of ordinary skill in the art would have been motivated to combine Shaffer and Saylor (Appx23-32). STA does not challenge any of the Board's findings as to whether the combination of Shaffer and Saylor disclose or render obvious every limitation of the challenged claims; it only disputes the Board's findings on motivation to combine. *See* STA Br. 4.

On motivation to combine, the Board found that a person of ordinary skill would have been motivated to combine Saylor's central security network with Shaffer's interoperability system, as depicted below. Appx23-32.



Appx23; Appx31 (citing Appx244).

In the combination, Saylor's central security network is represented by Saylor's Figure 1 on the left, while Shaffer's interoperability system is depicted in its Figure 3 on the right. In this combined Shaffer-Saylor system, Shaffer's interoperability system 120 (red) is the central communications hub that facilitates sending communications from one network to another—such as communications from Saylor's central security network to first responder personnel in another network. Appx30-31. The communications include filtered video clips from a monitored location that Saylor's system processes; based on rules stored in Saylor's databases, the video clips are forwarded to appropriate emergency personnel, via the Shaffer interoperability system. Appx24 (citing Appx243).

13

Thus, when combined, Saylor's central security network detects an alarm situation, queries its databases to retrieve the relevant multicast IP address of the relevant entities to notify (those entities in Shaffer's interoperability system), and then uses the multicast IP address to send the information—such as the video feeds along with the relevant alerts and notifications disclosed in Saylor (blue)—to the relevant recipients (purple) of Shaffer. Appx23-24 (citing Appx242-243).

The Board found every limitation of claim 1 disclosed in the combination of Shaffer in view of Saylor, Appx32-64, which STA does not dispute. Specifically, the Board found that Shaffer disclosed the communication channels, mobile communication device, and plurality of radio frequencies, with each frequency being associated with a geographic zone; and it found that the combined Shaffer-Saylor system disclosed video feeds associated with the geographic zones and the user policy, and identifying the relevant video feeds to send to the Shaffer communications system for distribution to the out-of-network personnel. *See id.*

The Board also found a motivation to combine Shaffer and Saylor. Appx23-32. In doing so, the Board credited Motorola's expert, Dr. Polish, and his testimony that a skilled artisan would have recognized that Shaffer's interoperability system is designed to connect certain networks—for example, connecting (1) a video security system that monitors particular buildings, as in Saylor, with (2) a network responsible for responding to incidents in those buildings, like a security or

14

emergency network described in Shaffer. Appx28. The Board also credited Dr. Polish's testimony that Shaffer's interoperability system "would have enabled security personnel or other responders to directly and seamlessly receive communications and information from surveillance cameras in a building utilizing Saylor's security network." Appx28-29 (quoting Appx959 ¶ 88). According to the Board, this testimony "specifically describes the desirable benefit of efficiency" that a skilled artisan could have "reasonably expected" from the proposed combination. Appx29.

The Board rejected STA's arguments that alleged structural differences between Shaffer and Saylor would have dissuaded a person of ordinary skill from combining the references. *See* Appx26-28. For example, STA argued that the two references "present two ways of structuring networks that are incompatible with one another, or at least so distinct that a POSITA would not be motivated to combine the references." Appx26-27 (quoting Appx536). The Board disagreed. *See* Appx28. Although it acknowledged "differences between Saylor and Shaffer," the Board found that the references are not "'fundamentally at odds with one another' such that a person of ordinary skill in the art would consider them 'incompatible with one another, or at least so distinct that a POSITA would not be motivated to combine the references' as [STA] argues." *Id*. (quoting Appx688).

15

The Board also rejected STA's argument that Shaffer and Saylor provide "redundant disclosures" and "redundant mechanisms for sending communications between networks." Appx29-30 (quoting Appx542-545). STA argued that this redundancy meant "there would be no need to combine the teachings of Shaffer with Saylor because Saylor already includes everything it needs to send notifications to recipients in different networks." Appx29-30 (quoting Appx545). The Board instead agreed with Motorola that Saylor's generic disclosure of "different possible '[m]ethods of notification'" (e.g., cell phone, pager, etc.) "is not redundant of using Shaffer's [interoperability system] approach to implement communications among devices on different networks." Appx30 (quoting Appx628-629). The Board again credited Dr. Polish's testimony, explaining how the proposed Shaffer-Saylor system would work and its benefits. *See* Appx30-31.

Motorola and Dr. Polish specifically provided evidence that Shaffer's interoperability system uses multicast IP to provide interoperability. For example, Shaffer's interoperability system can assign a multicast IP address to a group of endpoints (e.g., "local safety and security forces"), so even if the devices are in different networks, they can "communicate with each other through [interoperability system] 120." Appx241 (quoting Appx1315 ¶¶ 39-40). So, in the combined Shaffer-Saylor system, Motorola explained—and the Board agreed—that Shaffer's interoperability system provides the multicast IP address "to store in Saylor's

16

databases," so when "Saylor's central security network detects an alarm situation, it queries its databases to retrieve the relevant IP address of the relevant entities to notify (as provided by Shaffer's [interoperability system])" and uses that multicast IP address to send notifications, as disclosed in Saylor, to the relevant cross-network recipients. Appx24 (quoting Appx243); Appx30 (citing Appx956-957 ¶ 85).

Therefore, the Board concluded that the "clear complementation, interoperability, and benefits" of combining Shaffer and Saylor refutes STA's argument that there would have been no need to combine the teachings of Shaffer with Saylor. Appx31.

Finally, the Board rejected STA's argument that Motorola's proposed combination relied on improper hindsight. *See* Appx31-32. The Board again credited Dr. Polish's testimony that Shaffer's interoperability system provides implementation details to connect Saylor's central security network to relevant personnel and authorities in a different network who may respond to an incident, and that Shaffer's interoperability system is designed to connect a video security system with a different network that responds to incidents in those buildings. Appx32 (citing Appx956 ¶ 84, Appx958 ¶ 86, Appx959 ¶ 88).

Therefore, based on the complete record, the Board found that Motorola "demonstrated by a preponderance of the evidence that a person of ordinary skill in the art at the time of the claimed invention would have had a reasoned basis to

17

combine the teachings of Shaffer and Saylor" and "would have had a reasonable expectation of success in that endeavor." Appx32.

## SUMMARY OF ARGUMENT

The Board's finding that a person of ordinary skill in the art would have been motivated to combine Shaffer and Saylor is supported by substantial evidence and should be affirmed. The Board credited the disclosures in Shaffer and Saylor themselves, along with expert testimony from Motorola's expert, Dr. Polish, in concluding that a skilled artisan would have recognized the benefits of combining Shaffer's interoperability system with Saylor's central security network. The Board specifically found that the references are complementary and that combining these systems would achieve interoperability benefits, enabling security personnel to directly and seamlessly receive communications from surveillance cameras on Saylor's network to more efficiently convey communications and information across networks.

STA's focus on appeal—that Shaffer and Saylor provide "redundant disclosures"—was already considered and expressly rejected by the Board: Saylor discloses what notifications to send, while Shaffer's interoperability system provides the specific implementation details for *how* to deliver those notifications to end users, in a direct and seamless manner, across different network types. The Board did not find that Saylor lacked any disclosure of communicating notifications to end

18

users, as STA suggests. The Board adopted Motorola's argument and Dr. Polish's explanation that Shaffer provides the specific *implementation details* for communicating the notifications (including the video feeds) from Saylor's central security system to Shaffer's end users.

The Board's conclusion that the combination reflects "clear complementation, interoperability, and benefits" directly contradicts STA's redundancy argument. This finding is entitled to substantial deference and should be affirmed.

In any event, STA fails to challenge other substantial evidence supporting the Board's findings on motivation to combine, which are alternate grounds for affirmance.

## STANDARD OF REVIEW

This Court reviews the Board's legal conclusions de novo and factual findings for substantial evidence. *Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 271-72 (Fed. Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (citation modified). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

19

Obviousness "is a question of law based on underlying findings of fact." *Gartside*, 203 F.3d at 1316. Those underlying facts include the "scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

## ARGUMENT

### I.    The Board Already Considered and Rejected STA's Only Appeal Argument: That Saylor and Shaffer Provide "Redundant Disclosures"

STA rehashes arguments on appeal that the Board already analyzed in detail and rightfully rejected. *See* STA Br. 24-29. STA identifies no reversible error in the Board's findings.

The Board's findings on motivation to combine are well-supported. Appx23-32. The Board found that a skilled artisan would have been motivated to use Shaffer's detailed disclosure of interoperability system 120 to provide the backbone for cross-network communication of video clips from devices on Saylor's central security network 100 to end users. *See* Appx26; Appx28; Appx30-31. The Board specifically credited Motorola's arguments and Dr. Polish's testimony that Shaffer's interoperability system "provides the connection" between the two networks. Appx25; Appx30-31. That is, Shaffer's interoperability system makes Saylor's

20

video clips accessible to a user in another network when that user selects the relevant communication channel associated with the multicast IP address provided by Shaffer. *See* Appx958 ¶ 86; Appx967-968 ¶ 103 & n.3; Appx971-972 ¶ 107. Doing so allows Shaffer's interoperability system to seamlessly facilitate emergency communications from Saylor's central security network, such as a surveillance system in an office park, to the relevant personnel on a different network, such as police officers on a two-way radio network. Appx23-24 (citing Appx243); Appx31 (citing Appx244).

STA argues that the Board relied on a "false premise[] that the combination of Shaffer is necessary for the system of Saylor to communicate with recipients in different networks." STA Br. 25. In STA's view, Saylor already discloses ways to communicate with recipients in different networks, so the Board erred in finding a motivation to combine Saylor with Shaffer because Shaffer is unnecessary to achieve Saylor's communications. STA Br. 25-26. Every step of STA's syllogism is flawed.

The Board never assumed that Shaffer was "necessary" for Saylor to communicate with other networks. Instead, the Board correctly found that Shaffer's interoperability system would make Saylor's system more "desirable" and provide "efficiency" because it "would have enabled security personnel or other responders to *directly and seamlessly* receive communications and information from

surveillance cameras in a building utilizing Saylor's security network." Appx 29 (emphasis added) (citing Appx959 ¶ 88). Thus, Shaffer details a more *efficient* architecture for implementing cross-network communications. *See* Appx28-31; Appx244-245.

It was this "desirable benefit"—not reliance on any "false premise"—that led the Board to find a motivation to combine. STA does not and cannot explain how "seamless[]" communications could be achieved by Saylor, which, unlike Shaffer, does not disclose communicating "directly and seamlessly" with groups of emergency responders that have "their own communication networks that utilize particular communication parameters." *See* Appx1413 ¶ 27; Appx32 (citing Appx959 ¶ 88). Instead, it is Shaffer's "interoperability system" that provides the mechanism allowing direct and seamless "interoperability between endpoints and devices of various communications networks," which the Board found provided the "desirable benefit of efficiency." *See* Appx1412 ¶ 16; Appx32 (citing Appx959 ¶ 88). This was more than sufficient to support the Board's decision. *See infra* Argument § II.

In any event, the Board also identified other reasons a skilled artisan would have combined the two references. The Board specifically found that Shaffer and Saylor are well-suited for combination and complementary, not redundant. As Motorola explained, a person of ordinary skill would have recognized that the two

references complement each other because Shaffer provides an efficient architecture for sharing video feeds from Saylor's security network with an end user in another network: (1) "[a] POSITA would have recognized that Shaffer's [interoperability system] is well-suited to connect a network, such as a video security system designed to monitor particular buildings, with a different network that responds to incidents in those buildings, such as a security or emergency network"; and (2) "[a] POSITA would have recognized that Saylor discloses the type of network well-suited to work with Shaffer's [interoperability system]." Appx244-245 (citing Appx958-959 ¶¶ 86-87); *see also* Appx24-25; Appx28-29. The Board thus concluded that the combination communicates information across networks "in the manner already envisioned by both references." Appx25 (quoting Appx245-246).

The Board also appreciated that Shaffer's implementation disclosures are more robust than—not redundant of—what is disclosed in Saylor. Saylor generically discloses that "[m]ethods of notification" may include communication across different devices over the Internet, Appx1522, 11:25-28, but lacks a detailed description of "*how* to convey notifications to recipients in different networks," Appx25 (quoting Appx245). The Petition explained that Shaffer's interoperability system "provides the needed mechanism for interoperable communications" to achieve the goal of ultimately transmitting notifications to recipients in other networks. *Id.*; Appx30 (quoting Appx629). Specifically, Shaffer's interoperability

23

system "could readily assign and provide a multicast address for a particular group required to communicate." Appx26 (quoting Appx246). The resulting Shaffer-Saylor system allows Saylor's video clips to be communicated to recipients in other networks by identifying relevant recipients in an "address book" of multicast IP addresses provided by Shaffer's interoperability system. Appx245 (citing Appx959 ¶ 88). Thus, Shaffer's implementation details benefited the system described in Saylor: it "could store and use [Shaffer's multicast] address to direct the video clips and alarm information to that group, according to the user preferences already set up in Saylor." *Id*. (citing Appx960 ¶ 90). In essence, Shaffer's interoperability system "provides the connection" that bridges Saylor's central security network to the relevant personnel in a different network who may respond to an incident. Appx30 (quoting Appx956 ¶ 84).

That Shaffer discloses *more* details on how Saylor's central security network could use, for example, the "Internet" or "an IP communications network" to connect to other networks does not make Shaffer's interoperability system redundant of Saylor's teachings nor does it preclude a motivation to combine, as STA suggests. STA Br. 25-26 (quoting Appx1519-20, 6:22-25, 7:40-45; Appx1522, 11:24-28); STA Br. 27 (quoting Appx955 ¶ 83). Indeed, the references' overlapping disclosures and shared objective of facilitating cross-network communications reinforce that a person of ordinary skill in the art would have been motivated to combine them. *See*

24

*Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1380-81 (Fed. Cir. 2023) (holding that substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine references where those references "share [a] common goal" and expert testimony explains how the references are "complementary and compatible").

STA appears to suggest that a motivation to combine can exist only if the references share no overlapping disclosures. *See* STA Br. 26-27. That is contrary to well-settled law. Indeed, this Court already rejected this argument in *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1380-81 (Fed. Cir. 2023), holding that it was erroneous for the Board to conclude that if a reference "already addresses" the prior art problem "through the use of a known technique similar to that of [another reference]," there would be no motivation to combine. *See also Apple Inc. v. Gesture Tech. Partners, LLC*, 127 F.4th 364, 371 (Fed. Cir. 2025) (affirming the Board's findings, which "expressly considered and rejected" the patent owner's argument that "there would be no reason to implement Nonaka's remote-control functionality" under the proposed modification after the Board concluded "that a person of ordinary skill in the art would still perceive benefits in implementing Nonaka's teachings to Numazaki").

Here, Motorola's Petition explained, and the Board agreed, that a skilled artisan would have recognized that Saylor's central security network is "well-suited

25

to work with Shaffer's [interoperability system]" and that Shaffer's interoperability system provides additional implementation details for how to send interoperable communications across networks. Appx244-245; Appx24-25; Appx28-29. The Board also agreed that a skilled artisan would have recognized that the combined Shaffer-Saylor system would operate more efficiently: Shaffer's interoperability system "would have enabled security personnel or other responders to directly and seamlessly receive communications and information from surveillance cameras in a building utilizing Saylor's security network." Appx29 (quoting Appx959 ¶ 88). Substantial evidence supports those findings, which adequately show a motivation to combine.

Dr. Polish did not provide contradictory testimony, as STA argues. STA Br. 26-27 (citing Appx955 ¶ 83; Appx958-959 ¶ 87). He testified that Saylor discloses conveying notifications, for example, over the Internet; he never testified that Saylor discloses the same level of detail as Shaffer as to *how* to transmit that information across networks. Instead, he relied on Shaffer's interoperability system for those necessary details. *See* Appx956-957 ¶ 85 (citing Appx1415 ¶¶ 39-40); Appx959 ¶ 88. STA mischaracterizes Dr. Polish's deposition testimony by relying on its counsel's question rather than on Dr. Polish's actual answer. STA Br. 27 ("Saylor discloses how to convey notifications to recipients in different networks in a myriad of ways." (quoting Appx3642, 54:6-11)). Dr. Polish responded that "Saylor

26

discloses that you can do it in lots of different ways and that it lists a bunch of examples." Appx3642, 54:9-11. Those examples included, from the prior question, "cell phone, regular phone, pager, PDA, e-mail, instant messenger, or other form of communication." *Id.*, 54:1-4. This is a far cry from admitting that Saylor teaches identical implementation details as Shaffer—which Dr. Polish never did. And STA asked no follow-up questions. *See* Appx3642, 54:9-11.

STA already presented this very evidence in its Patent Owner Response. Appx543-544. Contrary to STA's assertion, the Board did not ignore it. The Board expressly cited those same pages when summarizing STA's position. *See* Appx29 (citing Appx542-545). As the factfinder, the Board is entitled to weigh Dr. Polish's credibility and testimony and did so here when it rejected STA's argument that Dr. Polish's testimony was inconsistent. *See Roku, Inc. v. Universal Elecs., Inc.*, 63 F.4th 1319, 1325 (Fed. Cir. 2023) (holding that the Board "was entitled to weigh the evidence in the record"). The Board is not required to recount every piece of this evidence in rejecting STA's position but, rather, may treat the argument commensurate with STA's (short) presentation. *See, e.g.*, *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1066-67 (Fed. Cir. 2018) ("Although the Board's reasoning could have been more thorough, we do not find fault in the Board's arguably limited treatment of [the] arguments . . . where the Board's treatment was at least commensurate with [the appellant's] presentation of this issue."(citation

modified)); *Apple Inc. v. Gesture Tech. Partners, LLC*, 129 F.4th 1367 (Fed. Cir. 2025) ("While we agree that the Board did not expressly explain its thoughts on the relevance of low-cost communications, 'there is no requirement that the Board expressly discuss each and every negative and positive piece of evidence lurking in the record to evaluate a cursory argument.'").

STA's cited cases, for which STA provides no analysis whatsoever, also fail to support its argument that the Board's finding on motivation to combine lacks substantial evidence. *See* STA Br. 29. Neither *Sierra Wireless* nor *Ericsson* even involved motivation to combine. In both, the Court determined that substantial evidence failed to support the Board's finding on whether the prior art discloses a limitation because the Board's conclusion was directly contradicted by the prior art itself. *See Sierra Wireless, ULC v. Sisvel S.p.A.*, 130 F.4th 1019, 1023-24 (Fed. Cir. 2025) ("The Sachs reference and evidence from both parties indicate that the T_reorder timer of Sachs Figure 5 is stopped when reordering is finished, rather than when missing PDUs are received. Therefore, the Board's fact finding to the contrary is not supported by substantial evidence."); *Ericsson Inc. v. Intell. Ventures I LLC*, 890 F.3d 1336, 1345-46 (Fed. Cir. 2018) ("[The Board's] statement of the [patent] disclosure is contrary to the evidence."). STA does not challenge the Board's findings on whether either reference—or the combination—disclose the limitations. And neither Shaffer nor Saylor contradicts any of the Board's findings on motivation

to combine, where Shaffer provides added implementation details for *how* the methods of communication in Saylor would be communicated across different networks. *See* Appx29-31.

Likewise, STA's cases relating to failure to address evidence or argument (STA Br. 29) are inapposite given that the Board already considered and expressly rejected all of STA's arguments (Appx29-31). *Cf. Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1351-52 (Fed. Cir. 2018) (concluding the Board "failed to consider the entirety of the record" in the real party-in-interest issue); *WhatsApp, Inc. v. TriPlay, Inc.*, 752 F. App'x 1011, 1016-17 (Fed. Cir. 2018) (nonprecedential) (vacating the Board's nonobviousness decision after it failed to "expressly consider" arguments against motivation to combine).

Finally, STA has twice forfeited the new argument it raises, for the first time on appeal, in a footnote: that because the '830 Patent and Shaffer share the same first-named inventor (Mr. Shmuel Shaffer) and the same original assignee (Cisco Technology, Inc.), Motorola somehow relies on "improper hindsight" and "seeks to punish a patent applicant for making improvements to an invention and filing an improvement patent." STA Br. 29 n.2. Arguments like this "raised only in a footnote are forfeited as undeveloped." *Barrette Outdoor Living, Inc. v. Fortress Iron, LP*, 156 F.4th 1353, 1363 n.1 (Fed. Cir. 2025). And STA never previously raised this "hindsight" argument or the materiality of any relationship between Shaffer and the

29

'830 Patent on patentability to the Board. *See* Appx535-548. Arguments not presented below are also forfeited. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("[A] position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). In any event, STA's argument fails on the merits. STA never disputed—before the Board or on appeal—that Shaffer is prior art to the '830 Patent. *See* Appx13; Appx524-525. There is no prohibition on using Shaffer to render the challenged claims of the '830 Patent unpatentable. Nor does STA's conclusory footnote identify any error in the Board's findings.

## II.    STA Fails to Show Prejudicial Error Because Other Substantial Evidence Supports the Board's Findings on Motivation to Combine

The Board's findings on motivation to combine are supported by ample evidence not challenged by STA on appeal. In particular, STA does not explain why any error by the Board in analyzing STA's redundancy argument would warrant remand where unchallenged substantial evidence also supports the Board's finding that a skilled artisan would have been motivated to combine Shaffer and Saylor.[1] *See In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) ("Thus, to prevail the appellant

---

[1] Having failed to raise this argument in its opening brief, STA cannot raise this argument in its reply brief. *See Becton Dickinson & Co v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("An issue not raised by an appellant in its opening brief . . . is waived."); *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1156 (Fed. Cir. 2017) (same).

must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below."). The Court can affirm for these alternate reasons, which are unchallenged and supported by substantial evidence.

For instance, STA does not contest that Shaffer's interoperability system—as the name implies—is designed to provide interoperability between networks: "to connect various types of networks, including PTT radio networks typically used by security or emergency personnel, and local area networks (LAN) or public switched telephone networks (PSTN) (typically used by sensors in homes and businesses)." Appx24 (quoting Appx244); *see also* Appx1414-1415 ¶ 37; Appx958 ¶ 86. Nor does STA dispute Dr. Polish's testimony—credited by the Board—that a skilled artisan would have recognized that Shaffer's interoperability system is designed to connect certain networks, such as connecting a video security system that monitors particular buildings with a different network, like a security or emergency network, that is responsible for responding to incidents in those buildings. Appx28 (citing Appx958 ¶ 86).

STA also does not dispute that Saylor discloses, at a high level, cross-network communications. Saylor describes a central security network that receives alarms from sensors in buildings and other facilities. *See* Appx25 (citing Appx245); Appx28; *see also* Appx1519, 6:33-43; Appx1525, 17:10-21. STA did not dispute that Saylor's central security network processes the alarms and transmits

notifications and information to relevant recipients in *other* networks. *See* Appx25 (citing Appx245); *see also* Appx1519-1521, 6:33-43, 8:18-33, 9:25-28. The Board, therefore, found that Saylor discloses a network that is compatible with, and well-suited to work with, Shaffer's interoperability system. Appx25-28.

Moreover, STA fails to challenge the Board's finding that the combined Shaffer-Saylor system would have been more efficient, for example, because it would allow security personnel and other responders to "directly and seamlessly receive communications and information from surveillance cameras in a building utilizing Saylor's security network." Appx29 (quoting Appx959 ¶ 88). The Board again credited Dr. Polish's testimony describing this efficiency. *Id.* It likewise credited Dr. Polish's testimony as describing a "desirable benefit of efficiency" that a skilled artisan "would have reasonably expected to obtain" from the proposed combination. Appx29 (citing Appx959 ¶ 88). STA raises no dispute with the Board's efficiency finding or with Dr. Polish's testimony that the combined system would be more efficient. *See* STA Br. 25 (expressly acknowledging this finding).

Finally, the Board agreed that a person of ordinary skill would have had a reasonable expectation of success in combining Saylor and Shaffer "in the manner already envisioned by both references—namely, by a first network sending a packet-based communication through an intermediary network to a second network also connected to the same intermediary network." Appx25-26 (quoting Appx245-246);

32

Appx32; *see also* Appx969 ¶ 89. STA fails to challenge this finding, which is also supported by the disclosures from the references themselves as well as Dr. Polish's expert testimony, which the Board credited. Appx29; Appx959 ¶ 89 (citing Appx1499, Fig. 1; Appx1519, 6:22-25; Appx1412 ¶ 20).

Thus, substantial evidence supports the Board's finding on motivation to combine. *See Roku*, 63 F.4th at 1325 (holding that the Board "was entitled to weigh the evidence in the record" and its finding was supported by substantial evidence, including the disclosures from the challenged patent specification and expert testimony). Based on this substantial evidence, STA cannot show the Board's analysis of the references' purportedly redundant disclosures—even if error— warrants reversal. The Court can affirm on these alternative grounds.

\* \* \*

STA asks that this Court either reverse or "remand[] to the Board for further consideration." STA Br. 30. This Court should affirm for the reasons stated above. Although STA's request for a remand on the Shaffer-Saylor combination (Ground 1) is entirely undeveloped and unsupported, to the extent this Court finds any error in the Ground 1 issue, it should remand at least for the Board to consider Motorola's Ground 2—which the Board did not reach—in the first instance. *See* Appx85-86.

33

## **CONCLUSION**

This Court should affirm the Board's determination that all challenged claims of the '830 Patent would have been obvious.

Date: March 2, 2026                    /s/ Lauren J. Dreyer

                                       Lauren J. Dreyer
                                       Eliot D. Williams
                                       Katharine M. Burke
                                       Baker Botts L.L.P.
                                       700 K Street, N.W.
                                       Washington, DC 20001-5692

                                       Robert L. Maier
                                       Baker Botts L.L.P.
                                       30 Rockefeller Plaza
                                       New York, NY 10112

                                       Clarke Stavinoha
                                       Baker Botts L.L.P.
                                       2001 Ross Avenue, Suite 900
                                       Dallas, TX 75201

                                       Lori Ding
                                       Baker Botts L.L.P.
                                       910 Louisiana Street
                                       Houston, TX 77002

                                       *Attorneys for Appellee*
                                       *Motorola Solutions, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-1787

**Short Case Caption:** STA Group LLC v. Motorola Solutions, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  6727  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/02/2026

Signature: /s/ Lauren J. Dreyer

Name: Lauren J. Dreyer

Save for Filing

**FORM 30. Certificate of Service**

**Form 30**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**  25-1787

**Short Case Caption**  STA Group LLC v. Motorola Solutions, Inc.

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on _____

by ☐ U.S. Mail   ☐ Hand Delivery   ☑ Email   ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Jason Alexander Engel | Email: jason.engel@klgates.com |
| Erik Halverson | Email: Erik.Halverson@klgates.com |
| Nicholas F. Lenning | Email: nicholas.lenning@klgates.com |
| | |
| | |

☐  Additional pages attached.

Date: 03/02/2026

Signature:  /s/ Lauren J. Dreyer

Name:  Lauren J. Dreyer